**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Brandon French, | ) | C/A No. 3:11-00717-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Richland County, Howard | ) | |
| Brockington, Ronnie Smith, | ) | |
| Christopher Wright, and Ira Peay, | ) | |
| in their individual capacities, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Brandon French ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"), alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights. ECF No. 66 at 8 ¶ 39. In addition, Plaintiff alleges state law claims for negligence, assault, battery, and civil conspiracy under the South Carolina Tort Claims Act ("Tort Claims Act"). Id. at 2-7. Plaintiff seeks actual, compensatory, and special damages, including attorney's fees and the costs of this action. Id. at 9 ¶ 43.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a member of the United States Navy serving on the USS Carl Vision aircraft carrier, took a military leave of absence to attend his younger brother's wedding in Alabama. ECF No. 84-2 at 1 (French Dep. 38:14-38:21, June 13, 2012). On September 8, 2009, as he was traveling to Alabama, Plaintiff stopped in Columbia, South Carolina to visit a friend who had recently returned to civilian life after having served in the Navy. Id. (French Dep. 38:8-38:17). Later that evening, they went out for dinner and then to several bars in the Five Points area of Columbia. ECF No. 83

1

at 3. In the hours that followed, Plaintiff and his friend became highly intoxicated. Id. Eventually, Plaintiff's friend was told to leave the bar due to his intoxication. Id. Plaintiff's friend returned to his vehicle and fell asleep while waiting for Plaintiff. Id. Thereafter, Plaintiff was also instructed to leave the bar after causing a disturbance. Id. After leaving the bar, Plaintiff continued to engage in disruptive behavior outside a bar located on Harden Street. Id.; ECF No. 83-1 at 1.

At approximately 2:55 a.m. on September 9, 2009, Officer W. Parker ("Officer Parker" or "W. Parker") and Officer Rivas of the City of Columbia Police Department ("CPD") were notified of Plaintiff's disruptive behavior. ECF No. 83-1 at 1. When the officers made contact with Plaintiff, they observed a "strong odor of alcoholic beverage about his breath and person, slurred speech, and [that he] was unsteady on his feet." Id. Plaintiff allegedly "began using profanity . . . towards the officers." Id. As a result, Plaintiff was arrested, placed in handcuffs, and charged with Drunkenness, a violation of the Code of Ordinances of the City of Columbia ("COC") § 14-98. Id. Plaintiff continued to use profanity towards the officers in a "loud and boisterous" manner, which caused several people to gather and watch his interaction with the officers. Id. At that time, Plaintiff was charged with disorderly conduct.[1] Id. at 2. After Plaintiff was searched incident to arrest, Officer Parker transported Plaintiff to Alvin S. Glenn Detention Center ("ASGDC" or "detention center"). Id. at 2.

When Plaintiff arrived at ASGDC, he began the booking process. ECF No. 83 at 4. During the booking process, Plaintiff yelled, cursed, and used racial epithets towards the ASGDC detention officers. Id. at 4. Plaintiff was then provided an ASGDC uniform to change into. Id. After

---

[1]

On October 28, 2009, Plaintiff pleaded guilty to drunkenness and disorderly conduct in the City of Columbia municipal court. ECF No. 78-1 at 2; ECF No. 78-3 at 5 (French Dep. 49:20-49:25).

removing his personal clothing, the detention officers took Plaintiff, naked, to Cell D because of his continued disruptive behavior.  Id.; ECF No. 78-2 at 2 ¶ 7.  Once inside Cell D, Plaintiff continued to cause a disturbance.  ECF No. 78-2 at 2 ¶ 7.  In response to Plaintiff's behavior and failure to comply with instructions, the detention officers' supervisor advised them to take Plaintiff to Pre-Booking Cell 2 ("Cell 2").  ECF No. 84-1 at 3.

Following their supervisor's instructions, ASGDC detention officers Howard Brockington ("Defendant Brockington"), Ronnie Smith ("Defendant Smith"), Christopher Wright ("Defendant Wright"), and Ira Peay ("Defendant Peay") (collectively "the detention officers") entered Cell D to remove Plaintiff's personal belongings and to place him in Cell 2.  ECF No. 84-1 at 3-5. Plaintiff allegedly spit into Defendant Brockington's face as he was walking into Cell D.[2]  Id. at 1.  At that time, the detention officers attempted to handcuff and restrain[3] Plaintiff, but he refused to comply. ECF No. 78-1 at 3.  As he struggled to resist the detention officers' attempts to restrain him, Plaintiff alleges that he was elbowed in the face and kicked in the head and in the side.  ECF No. 84-2 at 17 (French Dep. 87:18-87:21).  Plaintiff further alleges that he was "jerked up" by the arm, which caused him to black out.  ECF No. 83 at 4.  When he awoke later that morning, Plaintiff was lying naked on the floor of the cell with the ASGDC uniform draped over his body.  Id.  Plaintiff further

---

[2] As a result, Plaintiff was allegedly charged with "Assault on Staff" and subsequently found guilty under the ASGDC disciplinary process.  ECF No. 90 at 3 n.1; ECF No. 90-2 at 1-2.  Further, during his deposition, Plaintiff testified as follows: "I do not remember spitting on anyone . . . . [b]ut I suppose there is a possibility it could have happened."  ECF No. 78-3 at 18 (French Dep. 84:23-84:25).

[3] Plaintiff alleges that the detention officers attempted to "hog tie" him.  ECF No. 78-3 at 17 (French Dep. 83:9-83:21).

alleges that when he sought treatment for his arm, the ASGDC physician told him to seek medical attention once he was released. ECF No. 66 at 3 ¶ 16.

At approximately 12:39 p.m. on September 9, 2009, Plaintiff appeared before a COC municipal judge and was released on a personal recognizance bond. ECF No. 83 at 4; ECF No. 84-2 at 20 (French Dep. 93:6-93:9). Plaintiff was released into the custody of military police officers from the Department of the Army Fort Jackson military base. ECF No. 83 at 4. The military police officers verified that Plaintiff's absence from his naval duty station was authorized, and then released him. Id. Later that evening, Plaintiff sought medical treatment for his arm at the Spalding Regional Medical Center ("SRMC") in Griffin, Georgia. Id.; ECF No. 83-2 at 1. At SRMC, it was determined that Plaintiff had suffered a hyper-flexed elbow. ECF No. 83-2 at 2.

On February 11, 2011, Plaintiff filed a complaint (the "original complaint") in the Court of Common Pleas for Richland County, alleging negligence, assault, battery, civil conspiracy, and deprivation of constitutional rights under 42 U.S.C. § 1983. ECF No. 1-1. In the original complaint, Defendants were identified as COC, CPD, W. Parker, and John Doe and Jane Doe, in their individual and official capacities, representing unidentified officers employed by either COC and/or CPD. Id. On March 24, 2011, COC removed the case to this court. ECF No. 1. COC and CPD answered the complaint denying Plaintiff's claims on March 28, 2011. ECF No. 5.

On June 8, 2011, Plaintiff filed a motion to amend the original complaint to add Richland County and the Richland County Sheriff's Department ("RCSD") as defendants. ECF No. 8. The court granted Plaintiff's motion to amend on July 11, 2011, and Plaintiff's amended complaint (the "amended complaint") was filed that same date. ECF Nos. 11, 12. On July 19, 2011, COC and CPD answered Plaintiff's amended complaint denying Plaintiff's allegations. ECF No. 13. On October

4

26, 2011, Richland County and RCSD answered the amended complaint denying Plaintiff's claims. ECF No. 21. Plaintiff stipulated to the dismissal, with prejudice, of W. Parker as a defendant on June 13, 2012. ECF No. 28. On June 19, 2012, Plaintiff stipulated to the dismissal, with prejudice, of COC and CPD as defendants. ECF No. 30. Richland County and RCSD filed a motion for summary judgment on July 7, 2012, ECF No. 33, to which Plaintiff filed a response in opposition on August 6, 2012[4] (the "first response in opposition") and August 21, 2012 (the "second response in opposition"). ECF Nos. 42, 47.

On August 28, 2012, Plaintiff filed a motion to amend the amended complaint to replace "John Doe and Jane Doe, in their individual and official capacities, representing unidentified officers employed by either [RCSD], and/or Richland County" with the names of the detention officers who allegedly attacked Plaintiff. ECF No. 49. On December 13, 2012, the court granted Plaintiff's motion to amend the amended complaint and withdrew, without prejudice, Richland County and RCSD's motion for summary judgment, granting leave to refile. ECF No. 64. Plaintiff filed his second amended complaint on January 10, 2013. ECF No. 66. In the second amended complaint, Plaintiff named Richland County and Howard Brockington, Ronnie Smith, Christopher Wright, and Ira Peay as defendants.[5] Id. Defendant Richland County and Defendant Smith answered the second

---

[4]

In his first response in opposition, Plaintiff did not present arguments, but instead asked that the court "hold its ruling on Defendant's [sic] Motion for Summary Judgment in abeyance pending the imminent completion of discovery . . . ." ECF No. 42 at 5. Plaintiff further indicated that, after discovery was completed, he would "supplement his response to Defendants' Motion for Summary Judgment." Id.

[5]

In his second response in opposition, Plaintiff conceded that "[t]he evidence developed in the case does not implicate Defendant Richland County Sheriff's Department, and thus Plaintiff does not contest Summary Judgment as to the RCSD." ECF No. 47 at 5. Consistent with this position, Plaintiff did not include RCSD as a defendant in his second amended complaint.

amended complaint denying Plaintiff's claims on January 30, 2013. ECF No. 69. On June 7, 2013, Defendant Peay answered the second amended complaint denying Plaintiff's claims. ECF No. 71. Defendants Brockington and Wright have neither filed an answer nor made an appearance in this action.[6]

This matter is before the court on Defendants Richland County, Smith, and Peay's (collectively "Defendants") joint motion for summary judgment filed June 28, 2013. ECF No. 78. On August 14, 2013, Plaintiff filed a response in opposition (the "final response in opposition") to Defendants' motion for summary judgment, ECF No. 83, to which Defendants filed a reply on October 6, 2013. ECF No. 90.

## II. LEGAL STANDARD AND ANALYSIS

### A. Standard

#### 1. Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 (4th Cir. 2011).

---

[6] Plaintiff filed a certificate of service indicating that Defendant Brockington was personally served. ECF No. 85. No certificate of service was filed with regard to Defendant Wright.

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "properly support . . . assertion[s] of fact" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

**2. Claims pursuant to 42 U.S.C. § 1983**

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To establish a cause of action under Section 1983, a plaintiff must allege: 1) the violation of a right protected by the Constitution or laws of the United States, and 2) that the defendant was acting under color of law.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

### a. Fourth Amendment

The Fourth Amendment's prohibition against unreasonable searches and seizures governs claims of excessive force when it arises in the context of an arrest, investigatory stop, or other seizure of an individual.  Graham v. Connor, 490 U.S. 386, 394-95 (1989).  "'[T]he Fourth Amendment . . . applies to the initial decision to detain an accused, not to the conditions of confinement after that decision has been made.'"  Robles v. Prince George's Cnty., Md., 302 F.3d 262, 268 (4th Cir. 2002) (quoting Riley v. Dorton, 115 F.3d 1159, 1163 (4th Cir. 1997)).  "Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply."  Id.

### b. Cruel and Unusual Punishment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments . . . ." U.S. Const. amend. VIII.  "Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977).   In other words, Eighth Amendment protections attach only "after conviction and sentence."  Graham v. Connor, 490 U.S. 386, 392 n.6 (1989).

8

### c. Fourteenth Amendment

Under the Fourteenth Amendment, no State may "deprive any person of life, liberty, or property without due process of law . . . ." U.S. Const. amend. XIV. There are three kinds of Fourteenth Amendment Due Process claims that may be brought under 42 U.S.C. § 1983. <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990). First, claims may be brought for the denial of those specific protections in the Bill of Rights that have been made applicable to the states. <u>Id.</u> Second, an individual may bring claims under the substantive component of the Due Process Clause "that bars certain arbitrary, wrongful government actions, 'regardless of the fairness of the procedures used to implement them.'" <u>Id.</u> (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)). Finally, a claim may be brought for a violation of procedural due process, which prohibits the deprivation of life, liberty, or property without "fair procedure." <u>Id.</u>

"[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment . . . ." <u>Riley v. Dorton</u>, 115 F.3d 1159, 1166 (4th Cir. 1997). To succeed on an excessive force claim, the plaintiff must show "that Defendants 'inflicted unnecessary and wanton pain and suffering.'" <u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir. 1998) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986)). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Id.</u> (internal quotation marks omitted). In making this determination, the court should consider (1) "the need for the application of force," (2) the relationship between the need for force and "the amount of force used," and (3) "the extent of the injury inflicted." <u>Orem v. Rephann</u>, 523 F.3d 442, 446 (4th Cir. 2008).

### 3. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citations omitted).

The Supreme Court has established a two-step analysis for qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001).[7] First, the court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1991)); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). If the court determines that no right has been violated, there is no need for further inquiry "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

---

[7] The Supreme Court has held that the two-step analysis does not need to be taken in the sequence established in Saucier. Specifically, the Supreme Court held that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). Additionally, the Supreme Court has held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson v. Layne, 526 U.S. 603, 609 (1999).

### B.  Analysis

### 1.  Excessive Force

Defendants assert that Plaintiff cannot establish the necessary elements of an excessive force claim under the Due Process Clause of the Fourteenth Amendment.  ECF No. 78-1 at 7.  Defendants argue that the application of force was necessary due to Plaintiff's continued combative and non-compliant behavior.  Id. at 11.  Defendants argue that the amount of force used was reasonable in that the detention officers used muscling techniques only after Plaintiff failed to comply with the detention officers' instructions.  Id.  Defendants contend that force was used in a good faith effort to maintain discipline, to protect the staff members, the inmate population, and Plaintiff himself.  Id. at 12.  Finally, Defendants assert that Plaintiff was not subject to excessive force because the injuries described in his medical records cannot be considered more than de minimis.  Id. at 14.  Therefore, Defendants assert that Plaintiff has failed to establish the use of excessive force.  Id.

Further, Defendants assert that Defendants Peay and Smith cannot be held liable under § 1983 because there is no evidence that they were personally involved with Plaintiff's alleged attack.  Id.  Defendants contend that rather than showing Defendants Peay and Smith's specific involvement in the alleged attack, Plaintiff has instead made a conclusory allegation that Defendants Peay and Smith were participants in a group of individuals when the assault took place.  Id. at 17.  Therefore, Defendants assert that summary judgment should be granted with respect to Defendants Peay and Smith.  Id. at 18.

In response, Plaintiff first points out that Defendants correctly note his excessive force claim should be analyzed under the Due Process Clause of the Fourteenth Amendment.  ECF No. 83 at 7.  Applying that standard (whether force is applied in good faith to maintain order, or maliciously to

11

cause harm), Plaintiff argues that the detention officers' alleged assault was not the result of their attempts to maintain order, but rather was an effort to inflict harm. Id. Plaintiff maintains that he was "forcibly dragged to a cell and beaten by several officers simultaneously." Id. at 8-9. Plaintiff further asserts that the court cannot grant summary judgment based on Defendants' version of the facts. Id. at 9.

With regard to Defendants' contention that Plaintiff failed to produce evidence of their individual participation in the assault, Plaintiff asserts that the detention officers' Incident Reports (the "Incident Reports") demonstrate their personal involvement with Plaintiff. Id. at 12. Plaintiff also argues that Defendant Smith's affidavit, in which he describes holding Plaintiff's right arm to assist with handcuffing, is evidence of his interaction with Plaintiff. Id. Finally, Plaintiff asserts that the issue of whether the detention officers' force was minimal, but necessary, or instead was unconstitutional, is an issue that should be resolved at trial. Id. at 13.

Plaintiff also contests Defendants' contention that Plaintiff's claims do not rise to the level of constitutional significance. Id. at 10. Relying on Wilkins v. Gaddy, 559 U.S. 34, 38 (2010), Plaintiff asserts that the absence of serious injury does not foreclose an excessive force claim. Id. at 11. In their reply to Plaintiff's final response in opposition, Defendants contest Plaintiff's reliance on Wilkins. ECF No. 90 at 9. Defendants assert that under the law in the Fourth Circuit prior to Wilkins, the Fourteenth Amendment was not violated when a pre-trial detainee suffered de minimis injuries. Id. at 10 (citing Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997)). Defendants further argue that because the events in this case occurred prior to the Wilkins decision, this case, for qualified immunity purposes, must be analyzed under the "then-existing clearly established law." Id.

12

### 2. Vicarious Liability

Defendants next argue that Defendant Richland County, as a local government entity, cannot be held liable unless it has an unconstitutional policy or custom that infringes on a plaintiff's constitutional rights. ECF No. 78-1 at 14; see Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978) (holding that a municipality is subject to liability for its customs or policies that result in the deprivation of a constitutional right). Defendants contend that Plaintiff has failed to establish liability against Defendant Richland County "through a custom, policy, or practice." Id. at 16. Defendants also argue that to the extent Defendant Richland County's policy or custom is at issue, there is no evidence that such policy or custom violates the Constitution. Id. Therefore, Defendants assert summary judgment is appropriate as to this issue. Id.

In his final response in opposition, Plaintiff notes that Defendant Richland County argues that it "may not be held vicariously liable for the acts of its employees . . . ." ECF No. 83 at 6. Plaintiff does not address this issue beyond mentioning Defendants' position on this issue.

### 3. The Court's Review

The court first addresses Defendants' arguments with regard to vicarious liability. As noted above, Plaintiff in his final response in opposition does not challenge Defendants' arguments as to vicarious liability. Moreover, in his second response in opposition to Defendant Richland County and RCSD's motion for summary judgment filed July 7, 2012 (ECF. No. 33), Plaintiff stated as follows:

> Plaintiff concedes that Defendants are correct . . . . Under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), and its progeny, municipalities and counties may be held liable under 42 U.S.C. § 1983 for wrongs inflicted by their employees only if such actions were taken pursuant to a policy or custom of the governmental entity in question. The evidence does not indicate that

13

any policy or custom of Defendant County led to Plaintiff being assaulted on September 9, 2009.

ECF No. 47 at 5. Plaintiff did not present any evidence or make any statements to indicate a change with regard to his position on this issue. Upon review of the record and in light of Plaintiff's previous response (which appears unchanged), the court grants Defendants' motion for summary judgment to the extent Plaintiff alleges vicarious liability.

The court now considers Plaintiff's Fourth and Eighth Amendment claims. The Fourth and Eighth Amendments do not apply to this case. As noted above, the Fourth Amendment applies to excessive force claims that occur during an arrest, investigatory stop, or other seizure of an individual. In addition, the Eighth Amendment applies only after conviction and sentencing. Here, the alleged assault occurred while Plaintiff was being held as a pretrial detainee. As such, the Fourteenth Amendment applies to this case. Moreover, Plaintiff in his response agreed with Defendants that the case should be analyzed under the Due Process Clause of the Fourteenth Amendment. Accordingly, Plaintiff's Fourth and Eighth Amendment claims are without merit.

Next, the court considers Defendants' assertion that Defendants Peay and Smith cannot be held liable because Plaintiff did not allege that they were personally involved in the assault. In response, Plaintiff notes that the Incident Reports (ECF No. 84-1 at 1-8) and Defendant Smith's affidavit demonstrate that Defendants Peay and Smith personally interacted with Plaintiff. Specifically, in his incident report, Defendant Peay states that he assisted Defendants Wright, Brockington, and Smith "in removing detainee French from intake Cell 'D' to Pre-Booking Cell #2." ECF No. 84-1 at 7. Additionally, in his affidavit and incident report, Defendant Smith states that he assisted by holding Plaintiff's right arm during the handcuffing process. See id. at 3; ECF No.

14

78-2 at 2 ¶ 2.  Plaintiff's evidence demonstrates that Defendants Peay and Smith personally interacted with Plaintiff during the alleged assault.  See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("[Defendant] must have had personal knowledge of and involvement in the alleged deprivation of [plaintiff's] rights in order to be liable.").  Defendants' argument is without merit.

The court now turns to Plaintiff's excessive force claim.  Defendants assert that Plaintiff has failed to establish a claim for excessive use of force.  Defendants maintain that Plaintiff's disruptive behavior warranted the use of some force.  Plaintiff does not appear to contest that some force, or at least a response to his behavior, was necessary.  However, there are conflicting accounts as to the degree and the way in which the detention officers applied such force.  Although Defendants claim that the use of force was minimal, and limited to "muscling techniques," Plaintiff asserts that he was elbowed in the face and kicked in the head and in the side.  However, Defendants assert that Plaintiff's injuries do not rise to the level of constitutional significance because his injuries are no more than de minimis.  In response, Plaintiff asserts that an excessive force claim is not foreclosed simply because a plaintiff suffered minor injuries.

In Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), the Fourth Circuit held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis."  Id. at 1263.  Thereafter, in Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997), the Fourth Circuit concluded that the Due Process Clause of the Fourteenth Amendment[8] governs excessive force claims of pretrial detainees.  The Fourth Circuit in Riley also

---

[8]

In his second amended complaint, Plaintiff asserts that he was "denied due process and equal protection of the law . . . ."  ECF No. 66 at 9 ¶ 43.  Plaintiff has failed to assert facts in support of an equal protection claim.  Moreover, there is no evidence of unequal treatment.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated

extended the de minimis injury standard of <u>Norman</u> to excessive force claims of pretrial detainees. <u>Id.</u>  Applying <u>Norman</u> and <u>Riley</u>, the Fourth Circuit granted summary judgment for the defendants in <u>Taylor v. McDuffie</u>, 155 F.3d 479 (4th Cir. 1998), finding that the plaintiff, a pretrial detainee, suffered a de minimis injury.  Finally, affirming the district court's denial of relief based on a determination that the complaining prisoner's injuries were de minimis, the Fourth Circuit again applied the reasoning of <u>Norman</u> and its progeny in <u>Wilkins v. Gaddy</u>, 308 F. App'x 696 (4th Cir. 2009) (unpublished) (per curiam).

The Supreme Court reversed the Fourth Circuit's holding in <u>Wilkins</u>, abrogating <u>Norman</u>, <u>Taylor</u>, and <u>Riley</u>.  <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 39 (2010).  In <u>Wilkins</u>, the Supreme Court made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38.  According to the <u>Wilkins</u> Court, the relevant inquiry is "the nature of the force – specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'"  <u>Id.</u> at 39 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)).  Based on the Supreme Court's decision in <u>Wilkins</u>, an excessive force claim is not foreclosed merely because a plaintiff suffered de minimis injury.

Despite <u>Wilkins</u>, however, Defendants maintain that Defendants Peay and Smith are entitled to qualified immunity.  The Fourth Circuit in <u>Hill v. Crum</u>, 727 F.3d 312 (2013) held that while "<u>Wilkins</u> abrogated <u>Norman</u> in 2010, <u>Wilkins</u> can only be applied prospectively in the context of a qualified immunity analysis."  <u>Id.</u> at 322.  In reaching this conclusion, the Fourth Circuit reasoned

---

differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").  As such, Plaintiff's equal protection claim is without merit.

that, at "the time of the alleged assault on Hill, <u>Norman</u> and its progeny were controlling in the Fourth Circuit and had been since 1994." <u>Id.</u> Thus, in deciding whether the law was clearly established for purposes of qualified immunity, <u>Wilkins</u> cannot be applied retroactively to the alleged assault in this case, which predates the 2010 <u>Wilkins</u> decision. Rather, the court must consider the applicable law at the time of the alleged assault, September 9, 2009.

The court next considers whether Defendants Peay and Smith are entitled to qualified immunity. As noted above, a "government official will be granted immunity unless (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct." <u>Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.</u>, 597 F.3d 163, 169 (4th Cir. 2010) (internal quotations and citations omitted). Assuming for purposes of summary judgment the truth of Plaintiff's allegations – that he was struck in the face and kicked in the head and side – the court also will assume that the detention officers used excessive force when they attempted to restrain Plaintiff. Turning to the second step in the analysis and applying the principles set forth in <u>Hill</u>, the court finds that this purported constitutional violation was not clearly established at the time of the alleged assault. Under the applicable law in 2009, a reasonable officer would have believed that "a plaintiff could not prevail on an excessive force claim 'absent the most extraordinary circumstances,' if he had suffered only *de minimis* injury." <u>Hill</u>, 727 F.3d at 322 (quoting <u>Norman</u>, 25 F.3d at 1263).

To determine whether qualified immunity applies, the court must next determine whether Plaintiff has proffered sufficient evidence for a reasonable jury to find that he suffered more than a de minimis injury. The following factors are relevant in determining whether injuries are de minimis: "the context in which the injuries were sustained; whether the inmate sought medical care;

17

whether the injuries were documented in medical records; and whether the documented injuries are consistent with the application of the amount of force necessary under the particular circumstances." Williams v. Collier, 357 F. App'x 532, 534 (4th Cir. 2009) (citing Taylor, 155 F.3d at 484-85 (4th Cir. 1998)).

In his final response in opposition, Plaintiff did not assert that he suffered more than de minimis injuries, nor does he concede that his injuries were de minimis. However, Plaintiff did provide an SRMC medical report as evidence of his injuries. According to the SRMC medical report, Plaintiff suffered abrasions on the wrist from being handcuffed, and a hyperflexed elbow, which restricted his ability to extend the elbow. In addition, Plaintiff suffered swelling of the elbow; bruising beneath the left eye, with no vision change; and soreness in his right thumb. There was no evidence of fracture or dislocation. To treat his injuries, SRMC personnel applied ice, an ace bandage, and an arm sling to the affected areas. Plaintiff was also prescribed Vicodin for pain.

In considering whether Plaintiff's injuries are more than de minimis, the court again points out that Plaintiff's behavior required the use of some force. See Norman, 25 F.3d at 1263 n.5 (finding that district court properly held that force was necessary where inmate created a disturbance by yelling at other inmates). It is undisputed that Plaintiff was disruptive and resisted the detention officers' attempts to restrain him.[9] Moreover, Plaintiff's injuries were consistent with the force

---

[9]

In this regard, Plaintiff testified as follows:

| Q: | If they said you were yelling and disruptive, would that be correct? |
| A: | Yes, sir. |
| Q: | If they said you were kicking at the officers, would that be correct? |
| A: | To keep them from hog tying me, yes. |

ECF No. 78-3 at 18 (French Dep. 84:9-84:14). Plaintiff further testified as follows:

necessary to restrain him. The abrasion on his left wrist was caused by the handcuffs; the hyperflexed elbow was a result of the detention officers' attempts to place him in handcuffs while he struggled to resist; and the bruise beneath his eye is no more than de minimis, as are his other injuries. Although Plaintiff alleges that he was kicked in the head and the side, the SRMC medical report does not indicate that he suffered or complained of any injuries to his head or body. Further, Plaintiff's assertion that he was "jerked up" by the left arm resulted in, as noted above, a hyperflexed, swollen elbow. Viewed in the light most favorable to Plaintiff, the evidence before the court establishes no more than de minimis injury. See Taylor, 155 F.3d at 482 (abrasions on the wrists and ankles, slight swelling in the jaw area, and tenderness in the ribs considered de minimis); Norman, 25 F.3d at 1263-63 (finding de minimis injury where inmate suffered sore thumb).

The court also concludes that there are no extraordinary circumstances in this case that warrant the denial of qualified immunity. See Norman, 25 F.3d at 1263 ("[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis."). Extraordinary circumstances exist when "the force used was 'repugnant to the conscience of mankind' or the pain suffered was 'such that it can properly be said to constitute more than de minimis injury.'" Hill, 727 F.3d at 323 (quoting Norman, 25 F.3d at 1263 n.4). The evidence before the court does not demonstrate that Plaintiff suffered pain that meets this

---

Q:     How did you resist them trying to restrain you? What did you physically do to resist?
A:     I mean, I tried to bring my arms down.
Q:     Okay.
A:     Because I was laying, you know, on my stomach face down naked. I tried to bring my legs down. You know, [I] obviously tried to bring my legs and arms into a ball, but they just kept pulling back out, pulling back out.

ECF No. 84-2 at 16 (French Dep. 86:8-86:16).

heightened standard.  Moreover, conduct that rises to the level of "repugnant to the conscience of mankind" includes "humiliation, degradation, or torture . . . ."  Id. at 324; see also Riley, 115 F.3d at 1168 n.4 (noting that examples of repugnant conduct include "forcibly pumping a suspect's stomach for evidence after unlawfully entering his house and bedroom or severely whipping and hanging a suspect in order to obtain a confession." (internal citations omitted)).  The detention officers' conduct fails to rise to this level.  See Hill, 727 F.3d at 324 ("[The] alleged conduct, which is undoubtedly reprehensible, nevertheless is more akin to brute force, rather than humiliation, degradation, or torture as we have described 'extraordinary circumstances' in other cases.").  Defendants Peay and Smith are entitled to qualified immunity.  Accordingly, Defendants' motion for summary judgment is granted as to this issue.

Having granted Defendants' motion for summary judgment on Plaintiff's claims pursuant to § 1983, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); 28 U.S.C. § 1367(c) (permitting district courts to decline supplemental jurisdiction over state claims when all federal claims have been dismissed).  As relevant here, in their motion for summary judgment, Defendants request that the court remand Plaintiff's state law claims to the Court of Common Pleas for Richland County, South Carolina.  ECF No. 78-1 at 4 n.3.  During a hearing on Defendants' motion for summary judgment, the court granted summary judgment with respect to Plaintiff's § 1983 claims and dismissed the state law claims, without prejudice.  ECF No. 95.  However, pursuant to Rule

20

54(b) of the Federal Rules of Civil Procedure,[10] the court reconsiders and now grants Defendants' request for remand. As such, Plaintiff's state law claims pursuant to the Tort Claims Act are remanded to state court.

Further, pursuant to Rule 54(b), the court addresses Defendants Wright and Brockington. First, as the court noted above, no certificate of service was filed with regard to Defendant Wright. To date, Plaintiff has not indicated that such service was accomplished. Under Rule 4(m) of the Federal Rules of Civil Procedure ("Rule 4(m)"), a plaintiff must serve a defendant within 120 days of the filing of the complaint. Plaintiff filed his second amended complaint on January 10, 2013, well over a year ago. Applying the four factor test set forth in <u>Davis v. Williams</u>, 588 F.2d 69, 70 (4th Cir. 1978), and because Plaintiff has failed to timely effect service of process, Defendant Wright is dismissed from this action, with prejudice, as to Plaintiff's § 1983 claims, pursuant to Rule 4(m) and Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") for failure to prosecute. Second, unlike Defendant Wright, Defendant Brockington was served on May 11, 2013, as stated in the certificate of service filed on August 20, 2013. ECF No. 85. To date, Defendant Brockington has failed to make an appearance in this action. Further, Plaintiff has failed to pursue any action against Defendant Brockington. Accordingly, under the four factor test referenced above and pursuant to Rule 41(b), Defendant Brockington is dismissed from this action, with prejudice, as to Plaintiff's § 1983 claims for Plaintiff's failure to prosecute.

---

[10]

Rule 54(b) provides, in pertinent part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

### III.  CONCLUSION

Upon careful consideration of the entire record, the court **grants** Defendants' motion for summary judgment with respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983.  Further, Defendant Wright and Defendant Brockington are dismissed from this action, with prejudice, as to Plaintiff's claims pursuant to 42 U.S.C. § 1983.  Plaintiff's claims pursuant to the South Carolina Tort Claims Act are remanded to the Court of Common Pleas for Richland County, South Carolina.


**IT IS SO ORDERED.**

 s/ Margaret B. Seymour_____
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
March 31, 2014

22